# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02119-NYW

THOMAS JEFFERSON WILLIAMS IV,

      Plaintiff,

v.

CARBAJOL,
SACKETT,
FARRELL, and
KRISWONZKI,

      Defendants.

---

## ORDER ON MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 36] filed on April 30, 2021 by Defendants Deputy Sackett, Sergeant Farrell, and Deputy Kriswonzki (collectively, "Defendants").[1]  This court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated May 20, 2021.  [Doc. 40].  Upon review of the Motion and the related briefing, applicable case law, and the entire docket, and being fully advised in the premises, I **GRANT** the Motion to Dismiss.  In addition, the court **ORDERS** the United States Marshals Service to serve Defendant Carbajol.

---

[1] Defendant Carbajol has not yet been served in this case, as addressed further below.  Accordingly, when this court uses the term "Defendants," it only refers to the three Defendants served—Defendants Deputy Sackett, Sergeant Farrell, and Deputy Kriswonzki.

## BACKGROUND

The court draws the following facts from the Amended Complaint [Doc. 6] and presumes they are true for purposes of the instant Motion.  On June 19, 2020, Plaintiff Thomas Jefferson Williams IV ("Plaintiff" or "Mr. Williams") was working in the kitchen at the El Paso County Jail (the "Jail") when Defendant Carbajol ("Mr. Carjabol"), a service worker with Trinity Food Service, twice asked Mr. Williams to engage in sexual acts.  [Doc. 6 at 7].  More specifically, Mr. Williams asked Mr. Carbajol if he could "put the cereal up."  [*Id.*].  Mr. Carbajol responded, "[y]ou wanna suck my what[?]"  [*Id.*].  When Mr. Williams asked Mr. Carbajol what he said, Mr. Carbajol repeated, "[y]ou wanna suck my what[?]"  [*Id.*].  According to Mr. Williams, he suffered from emotional distress and emotional harm as a result of Mr. Carbajol's harassment and was subsequently taunted and stalked by unnamed individuals.  [*Id.*].

Mr. Williams reported the alleged sexual misconduct to unnamed persons.  [*Id.* at 8].  He alleges that Defendant Deputy Sackett ("Deputy Sackett") failed to turn in the "alleged write-up paper work" to the hiring officer.  [*Id.* at 25].  He also alleges that Deputy Sackett retaliated against him by placing Plaintiff in a higher-security housing ward, which created a higher risk of danger to Plaintiff and put Plaintiff in a state of emotional duress and emotional harm.  [*Id.*].  Prior to this transfer, Mr. Williams was "unlocked all day," but after the transfer, he was locked in his cell for 21 hours per day and lost his visitation privileges and had less shower time.  [*Id.*].  Mr. Williams asserts that Deputy Sackett discriminated against him by "not writing up or investigating other alleged volunteer workers."  [*Id.* at 25-26].  In addition, Mr. Williams alleges that Deputy Sackett conspired with other deputies to get Mr. Williams fired from his kitchen job after he submitted grievances complaining of Mr. Carbajol's conduct.  [*Id.* at 26].

According to Mr. Williams, he started a petition that included the signatures of eight other

unnamed inmates who all stated that Mr. Carbajol had harassed them sexually or that they had witnessed Mr. Carbajol sexually harass another inmate. [*Id.*]. In addition, Mr. Williams alleges that he had in his possession a handwritten letter from Mr. Carbajol to another unnamed inmate in which Mr. Carbajol, through the form of a hangman game, asked the unnamed inmate to "[b]end over [p]lease." [*Id.* at 7].[2] Accordingly Mr. Williams, Defendant Deputy Kriswonzki ("Deputy Kriswonzki") harassed Mr. Williams by coming to his cell three times requesting that Plaintiff give him the hangman game and inmate petition. [*Id.* at 22]. Plaintiff alleges that Deputy Kriswonzki coerced him by saying, "Mr. Carbajol is a piece of shit[;]" "we need to get that son of a bitch fired[;]" "I need that Note." [*Id.*]. Then, on July 15, 2020, Deputy Kriswonzki came into Mr. Williams's cell and took the hangman document and the inmate petition without Mr. Williams's permission. [*Id.* at 21]. According to Mr. Williams, Defendant Sergeant Farrell ("Sergeant Farrell") harassed Plaintiff by sending Deputy Kriswonzki to his cell three times to confiscate the documents and commanded Deputy Kriswonzki to illegally seize the documents from his cell. [*Id.* at 28]. He asserts that Sergeant Farrell and Deputy Kriswonzki conspired and retaliated against him by placing him in a state of emotional harm and duress. [*Id.*]. According to Mr. Williams, the Jail said that it would document the confiscated evidence and return it, but is now refusing to return it, requiring Mr. Williams to "have [his] attorney request [the documents] through a discovery process." [*Id.* at 22].

On July 20, 2020, Plaintiff initiated this civil action against Deputy Sackett, Deputy Kriswonzki, Sergeant Farrell, and Mr. Carbajol, as well the Jail; Trinity Food Services; and two individuals identified as Mr. Dave and Ms. Victoria, who Plaintiff alleged are Trinity Food Service

---

[2] Mr. Williams alleges that this inmate did not report this incident for fear of being called a snitch and because the inmate was released from the Jail. [Doc. 6 at 8].

Supervisors. *See* [Doc. 1 at 1-3]. The Honorable Gordon P. Gallagher granted Plaintiff leave to proceed *in forma pauperis*, *see* [Doc. 4], and directed Plaintiff to file an Amended Complaint, *see* [Doc. 5], which Plaintiff did on August 10, 2020. [Doc. 6]. In the Amended Complaint, Mr. Williams named Mr. Carbajol, Mr. Dave, Ms. Victoria, Trinity Food Services, El Paso County, Deputy Sackett, Sergeant Farrell, and Deputy Kriswonzki as Defendants. [*Id.* at 3]. On December 14, 2020, Magistrate Judge Gallagher recommended that Plaintiff's claims against Deputy Sackett, Sergeant Farrell, and Deputy Kriswonzki be drawn to a presiding judge. [Doc. 16 at 10]. In addition, Magistrate Judge Gallagher recommended that Plaintiff's claim against Mr. Carbajol, only to the extent it alleges a claim of negligent infliction of emotional distress, be drawn to a presiding judge. [*Id.*]. Magistrate Judge Gallagher recommended that the remaining claims and Defendants be dismissed without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. [*Id.*]. On February 26, 2021, the Honorable Lewis T. Babcock accepted the Recommendation and dismissed Plaintiff's claims accordingly. [Doc. 20 at 2]. The case was then directly assigned to the undersigned. [*Id.*]. On March 29, 2021 and May 19, 2021, all served Parties consented to the jurisdiction of a Magistrate Judge. [Doc. 27; Doc. 39].

On April 30, 2021, Defendants filed the instant Motion to Dismiss, seeking dismissal of Plaintiff's claims against Deputy Kriswonzki, Deputy Sackett, and Sergeant Farrell pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 36]. On June 18, 2021, Plaintiff responded in opposition to the Motion to Dismiss, [Doc. 46], and Defendants have since replied. [Doc. 48]. Because the Motion is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

Federal courts are courts of limited jurisdiction.  Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *1mage Software, Inc. v. Reynolds & Reynolds, Co*., 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp*., 546 U.S. 500 (2006)).

### II.    Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint" and stating that the allegations must be sufficient to nudge a plaintiff's claims "across

the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.    Pro Se Pleadings

In applying the above principles, this court is mindful that Mr. Williams proceeds pro se and the court thus affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

**ANALYSIS**

**MOTION TO DISMISS**

Defendants argue that Plaintiff's claims against Defendants Kriswonzki, Sackett, and Farrell should be dismissed. [Doc. 36]. First, they argue that, to the extent Plaintiff's Amended Complaint sets forth any state law claims, Defendants are immune from liability based on the Colorado Governmental Immunity Act. [*Id.* at 4-5]. In addition, Defendants assert that Plaintiff's claims arising under 42 U.S.C. § 1983 must be dismissed for failure to state a claim under Rule 12(b)(6). [*Id.* at 10]. Finally, they argue that Defendants Kriswonzki and Farrell are entitled to qualified immunity insofar as Plaintiff raises claims against them based on an alleged illegal seizure of his documents. [*Id.* at 6, 8]. The court addresses these arguments in turn.

I.      **Plaintiff's Claims**

In his Amended Complaint, Plaintiff alleges that Defendants have violated numerous laws and various Amendments to the United States Constitution.  *See generally* [Doc. 6 at 21-29].  In the Order to Dismiss in Part and to Draw Case, Judge Babcock drew Claim One, only to the extent it alleges a claim of negligent infliction of emotional distress against Defendant Carbajol; Claims Six against Deputy Kriswonzki, Seven against Deputy Sackett; and Eight against Sergeant Farrell to a presiding judge, dismissing the remainder of the claims under Rule 8(a) of the Federal Rules of Civil Procedure.  [Doc. 20 at 2].  Because Mr. Williams proceeds pro se, the court applies the principles of liberal construction to Plaintiff's Amended Complaint.[3]  Liberal construction "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F. 2d at 1110.  For purposes of clarity, the court first parses the exact nature of Plaintiff's claims before turning to Defendants' arguments advocating for dismissal of those claims.

Plaintiff asserts that all Defendants committed the following violations: breach of duty; breach of care; breach of trust; a failure to train, supervise, or hire under the Fifth Amendment; negligent infliction of emotional distress or gross negligence under the Fifth Amendment; a violation of "Article 3 18-3-401" for a violation by one in a position of trust; a due process violation

---

[3] This court recognizes that it has construed Claims Six, Seven, and Eight in a manner that is broader than what Judge Gallagher discussed in his Recommendation.  [Doc. 16].  This court does not construe Judge Gallagher's Recommendation, and Judge Babcock's Order Dismissing in Part and Drawing the Case, as substantively dismissing the remainder of the allegations Contained in Claims Six, Seven, and Eight.  *See* [*id.*]; *see also* [Doc. 20].  As discussed more fully below, out of an abundance of caution, this court addresses what it construes as the breadth of each count.

under the Fifth and Fourteenth Amendments; retaliation under the Fifth and Fourteenth Amendments; and a violation of "Article 16-3-401" for unfair treatment in custody. [Doc. 6 at 23-29]. In addition, he alleges that Deputy Kriswonzki and Sergeant Farrell committed the following violations: defamation; harassment; unreasonable search and seizure under the Fourth Amendment; invasion of privacy pursuant to 28 U.S.C. § 1915; and excessive force under the Fifth Amendment. [*Id.*]. He also alleges that Deputy Sackett violated "Article 18-8-403" by placing "a typical hardship" on Plaintiff or committed "official oppression," and also discriminated against Plaintiff. [*Id.* at 27]. Finally, Plaintiff asserts that Deputy Kriswonzki should also be held liable for duress of imprisonment under the Fifth Amendment; duress of property under the Fifth Amendment; and stalking under "1708.7." [*Id.* at 21-23]. The court addresses these asserted causes of action in turn. In doing so, the court groups the causes of action that overlap with respect to each Defendant and the arguments together, rather than proceeding by numeric claim number, *e.g.*, Claim Six.[4]

### A.   State Law Claims

***Common Law Claims***. First, Plaintiff asserts that Defendants have breached their duties of care and trust but does not assert the legal basis for these claims. *See* [*id.* at 21-29]. The court

---

[4] Mr. Williams also asserts that each Defendant has committed a deprivation of his rights, privileges, and immunities under 42 U.S.C. § 1983. *See, e.g.*, [Doc. 6 at 23]. Section 1983 provides that any person under color of law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. However, the statute does not create any substantive rights, but instead creates a cause of action for relief "against those who, acting under the color of law, violate federal rights created elsewhere." *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995). In other words, § 1983 is a vehicle through which plaintiffs may allege that their constitutional rights have been violated, rather than a separate statute conferring separate rights that may be violated. For this reason, the court does not construe Plaintiff as asserting standalone claims under § 1983.

construes these assertions as common-law tort claims arising under Colorado law.  *Cf. Jordan v. Forbes*, No. 19-cv-02660-RM-SKC, 2021 WL 2792336, at *3 (D. Colo. Apr. 22, 2021), *report and recommendation adopted*, 2021 WL 2201336 (D. Colo. June 1, 2021) (construing "breach of the duty of care" claim as a state law tort claim).  In addition, defamation is a state-law tort claim.  *See, e.g.*, *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007) ("Claims for defamation are deeply rooted in the common law."); *Bustos v. United States*, 257 F.R.D. 617, 622 (D. Colo. 2009).  Thus, the court construes this claim as arising under Colorado law.

In addition, Mr. Williams asserts that Deputy Kriswonzki and Sergeant Farrell invaded his privacy pursuant to 28 U.S.C. § 1915.  *See* [Doc. 6 at 23].  But this statute governs federal court proceedings *in forma pauperis* and does not create any substantive rights, including a right to be free from an invasion of privacy.  *See* 28 U.S.C. § 1915.  However, Colorado law recognizes "a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life."  *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997).  The court thus construes this claim as a common-law tort claim under Colorado law.

Finally, although Mr. Williams asserts that his Fifth Amendment rights were violated by the negligent infliction of emotional harm, gross negligence, and/or intentional infliction of emotional harm, *see* [Doc. 6 at 19], he does not identify any federal-law basis for these claims.  The court thus liberally construes the Complaint as asserting state-law claims for intentional and negligent infliction of emotional distress.  *See, e.g.*, *Interstate Med. Licensure Compact Comm'n v. Bowling*, No. 20-cv-02942-CMA-NYW, 2021 WL 3024738, at *13, *24 (D. Colo. June 23, 2021), *report and recommendation adopted*, 2021 WL 3021566 (D. Colo. July 16, 2021) (finding that the plaintiff had failed to identity an adequate federal basis for an intentional infliction of

emotional distress claim but noting that the claim was "readily recognizable under state common law").

**Colorado Statutory Claims**.   Next, Plaintiff asserts that all three Defendants are liable under "Article 3 18-3-401: violated by one in a position of trust."   *See, e.g.*, [Doc. 6 at 27].  The court assumes that Plaintiff intends to assert a claim under Colo. Rev. Stat. § 18-3-405.3, which prohibits sexual assault on a child by one in a position of trust.  *See* Colo. Rev. Stat. § 18-3-405.3(1).  The court thus construes this claim as arising under the above-referenced statute.  In addition, Plaintiff asserts that all three Defendants have violated "Part IV Article 16-3-401: unfair treatment while in custody." [Doc. 6 at 27].  The court construes this claim as arising under Section 16-3-401 of the Colorado Revised Statutes, which provides provides that "[n]o unlawful means of any kind shall be used to obtain a statement, admission, or confession from any person in custody." Colo. Rev. Stat. § 16-3-401(1).  Finally, Plaintiff alleges Deputy Sackett "[p]laced a typical hardship on [Plaintiff], no [hearing] conducted, official oppression," under "18-8-403." [Doc. 6 at 27].  The court construes this as a claim under Colo. Rev. Stat. § 18-8-403, which provides that any public servant:

> commits official oppression if, with actual knowledge that his conduct is illegal, he . . . [h]as legal authority and jurisdiction of any person legally restrained of his liberty and denies the person restrained the reasonable opportunity to consult in private with a licensed attorney-at-law, if there is no danger of imminent escape and the person in custody expresses a desire to consult with such attorney.

Colo. Rev. Stat. § 18-8-403(1)(b).

**Stalking**.   In addition, Plaintiff asserts a claim of "1708.7 Stalking" against Deputy Kriswonzki.  [Doc. 6 at 23].  Through the court's independent research, the court believes that Mr. Williams is attempting to assert a claim under California law, which provides that a person is liable for the tort of stalking if he or she "engaged in a pattern of conduct the intent of which was to

follow, alarm, place under surveillance, or harass the plaintiff." Cal. Civ. Code § 1708.7. Plaintiff, however, asserts no legal basis for asserting a claim under California law. Although "[s]tate remedies may extend to out-of-state parties . . . when the parties are harmed by wrongful conduct *occurring in California*," *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629 (N.D. Cal. 2011) (emphasis added), "California law embodies a presumption against the extraterritorial application of its statutes." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000). Even construing Plaintiff's filings liberally, he does not allege that any of the conduct at issue occurred in California; instead, he clearly asserts that the events giving rise to his claims occurred in the El Paso County Jail. *See, e.g.*, [Doc. 6 at 22]. The court thus cannot conclude that Plaintiff can state a stalking claim under California law.

However, Colorado law also provides a tort-law remedy for stalking. *See* Colo. Rev. Stat. § 18-3-602 ("A person commit stalking if directly, or indirectly through another person, the person knowingly . . . [r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person."). The court thus construes Plaintiff's stalking claim as one arising under Colorado law.

### B.    Federal Law Claims

***Due Process Violations***. Plaintiff asserts that all three Defendants have violated his right to due process under the Fifth and Fourteenth Amendments. Because Defendants are state actors, Mr. Williams's due process claims arise under the Fourteenth Amendment. *See Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013) ("The Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the

Fourteen[th] Amendment applies to actions by state governments."). The court thus construes Plaintiff's due process claims as arising only under the Fourteenth Amendment.[5]

*Retaliation*. Plaintiff asserts that Deputy Kriswonzki, Deputy Sackett, and Sergeant Farrell violated his right to be free from retaliation under the Fifth and Fourteenth Amendments. [Doc. 6 at 24, 26, 29]. Plaintiff, however, appears to allege that certain Defendants took his belongings, moved him to a less desirable living placement, and/or conspired to get him fired from his kitchen job in retaliation for filing administrative grievances complaining of Mr. Carbajol's conduct. *See, e.g.*, [*id.* at 26, 28]. Such a claim is generally asserted under the First Amendment. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (explaining that the First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech") (quotation omitted); *Harker v. Neyhart*, No. 20-cv-03530-SKC, 2021 WL 3883638, at *4 (D. Colo. Aug. 31, 2021) (construing allegation that the defendant retaliated against the plaintiff for filing a prison grievance as a First Amendment retaliation claim). The court thus construes Plaintiff as asserting a First Amendment retaliation claim.[6]

*Discrimination*. Plaintiff alleges that Defendant Sackett "discriminated against [him] by not investigating or writing up other alleged volunteer workers" and by not punishing or relocating other volunteer workers. [Doc. 6 at 26]. Mr. Williams does not set forth any legal basis for this claim but appears to assert that he was discriminated against in relation to other inmates. *See*

---

[5] To the extent Plaintiff alleges a failure to train, supervise, or hire; abuse of authority; duress of imprisonment; duress of property under the Fifth Amendment, *see, e.g.*, [Doc. 23 at 6, 29], the court construes these allegations as encompassed by Plaintiff's Fourteenth Amendment claim under the Due Process Clause.

[6] To the extent that Plaintiff attempts to couch his retaliation allegations as a substantive due process violation, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

*generally* [Doc. 6]. The court liberally construes this claim as a Fourteenth Amendment equal protection claim. *See Mucsarney v. McGaughey*, No. 15-cv-02315-GPG, 2015 WL 6171999, at *2 (D. Colo. Oct. 21, 2015) (construing discrimination claims as equal protection claims).

*Excessive Force*. Plaintiff asserts a Fifth Amendment claim of excessive force, as well. *See, e.g.*, [Doc. 6 at 23]. "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). "Thus, a district court evaluating an excessive force claim must first "isolate the precise constitutional violation with which [the defendant] is charged" because "[t]he choice of amendment matters." *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (quoting *Porro*, 624 F.3d at 1325 (alterations in original)). Determining which amendment applies to an allegation of excessive force requires consideration of "where the [plaintiff] finds himself in the criminal justice system." *Id.* (quoting *Porro*, 624 F.3d at 1325 (alterations in original)). For example, where the Plaintiff is a convicted prisoner, his claims arise under the Eighth Amendment; however, where the Plaintiff is a pretrial detainee, his claims arise under the Fourteenth Amendment. *See id.* Here, Plaintiff does not allege his status at the time of the incident. *See generally* [Doc. 6]. The court will thus construe this claim as arising under either the Eighth or Fourteenth Amendments.[7]

*Fourth Amendment Unreasonable Search and Seizure*. Plaintiff asserts a Fourth Amendment claim for "illegal search and seizure" against Deputy Kriswonzki and Sergeant Farrell. *See* [*id.* at 23, 29].

---

[7] The Tenth Circuit applies the Fourth Amendment to excessive force claims that arise out of force used "leading up to and including an arrest." *Booker*, 745 F.3d at 419. Because there are no allegations that any of the events in question here occurred before or after an arrest, the court does not construe the Amended Complaint as raising a Fourth Amendment excessive force claim.

*Conspiracy*.  Finally, Plaintiff alleges generally that each of the Defendants conspired against him, but does not set forth the exact nature of the alleged conspiracy or conspiracies.  *See* [*id.* at 22 (alleging that Deputy Kriswonzki conspired against him); *id.* at 26 (alleging that Deputy Sackett "conspired against [Plaintiff] with other deput[ies] to get [him] fired[] for writing a series of grievances"); *id.* at 28 (alleging that Sergeant Farrell, with Deputy Kriswonzki, conspired and retaliated against him by "placing [him] in a state of emotional harm and duress [and also] disregarding [his] constitutional rights.")].  The court construes Plaintiff's conspiracy allegations liberally to allege that Deputy Sackett conspired with others to violate Plaintiff's First Amendment rights and that Deputy Kriswonzki and Sergeant Farrell conspired with each other to violate Plaintiff's due process rights.

Having extracted and set out each of Plaintiff's claims, the court now turns to Defendants' arguments.

## II.    The Colorado Governmental Immunity Act

First, Defendants argue that all of Plaintiff's state-law tort claims should be dismissed for failure to comply with the Colorado Governmental Immunity Act ("CGIA").  [Doc. 36 at 4].  The CGIA, codified at Colo. Rev. Stat. §§ 24-10-101 to -120, applies when federal courts hear Colorado tort claims under supplemental jurisdiction, *Aspen Orthopedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 838 (10th Cir. 2003), and bars actions in tort against public employees and entities, subject to certain provisions waiving immunity.  *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001).  The CGIA immunizes public employees from liability in tort actions that "arise[] out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing injury was

willful and wanton; except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24-10-106(1)." Colo. Rev. Stat. § 24-10-118(2)(a).

But regardless of whether public employees are afforded immunity under the CGIA, a plaintiff is required to comply with the CGIA's notice-of-claim provisions before filing an action in court. *Garcia v. Chamjock*, No. 11-cv-00263-PAB-MEH, 2012 WL 638145, at *3 (D. Colo. Feb. 27, 2012). Pursuant to § 24-10-109(1), a plaintiff must file written notice with the public entity or public employee "within one hundred eighty-two days after the date of discovery of the injury, regardless of whether the person knew all of the elements of a claim or of a cause of action for such injury." Colo. Rev. Stat. § 24-10-109(1). If the claim is against a non-state public entity or an employee thereof, "the notice shall be presented to the governing body of the public entity or the attorney representing the public entity." Colo. Rev. Stat. § 24-10-109(3). The purpose of this notice requirement is to "avoid[] prejudice to the governmental entity, encourage] settlement, and provid[e] public entities the opportunity to investigate claims, remedy conditions, and prepare defense of claims." *Finnie v. Jefferson Cty. Sch. Dist. R-1*, 79 P.3d 1253, 1258 (Colo. 2003).

The issue of proper notice is generally considered a jurisdictional prerequisite to bringing any action under the CGIA and applies when federal courts consider Colorado state law tort claims under supplemental jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013-14 (10th Cir. 2003); Colo. Rev Stat. § 24-10-109(1) ("Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action." (emphasis added)); *see also Curry v. Zag Built LLC*, 433 P.3d 125, 137 (Colo. App. 2018) (noting that the CGIA is an example of an explicit statutory limitation on jurisdiction). "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact'

that the plaintiff failed to comply with the notice provisions." *Aspen Orthopedics*, 353 F.3d at 840.

Defendants argue that Plaintiff's state law claims should be dismissed because Plaintiff "fails to allege compliance with the CGIA notice provisions in his Amended Complaint . . . and in fact, did not file a Notice of Claim with [El Paso] County" as required by the statute. [Doc. 36 at 6]. In response, Plaintiff argues that he "filed a complaint via Replevin with the El Paso County Courthouse on the date of August 24th[,] 2020." [Doc. 46 at 1]. In their Reply, Defendants argue that this is insufficient to constitute notice under the CGIA because notice must be filed *before* commencing a civil action. [Doc. 48 at 2].

The court respectfully agrees with Defendants that the Amended Complaint does not plead compliance with the CGIA, which is a sufficient basis for dismissal. *See Aspen Orthopaedics*, 353 F.3d at 842; *Weise v. Colo. Springs*, 421 F. Supp. 3d 1019, 1050 (D. Colo. 2019) ("In this case, plaintiff's complaint does not include any allegations that she complied with the notice provisions of the CGIA. She has therefore failed to demonstrate that the Court has jurisdiction over her state-law claims."). Although Plaintiff asserts new facts in his Response purporting to demonstrate his CGIA compliance, *see* [Doc. 46 at 1], the court cannot consider those new facts in ruling on the Motion to Dismiss. *See Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) ("[W]hen deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response."); *see also In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

The court thus need not decide whether Plaintiff's replevin action in state court could constitute sufficient notice under the CGIA or whether Plaintiff's potential failure to comply with

the CGIA notice requirements before filing this lawsuit constitutes a jurisdictional bar to his state claims even in light of his belated submission of a purported CGIA notice.[8]   Regardless of these issues, Plaintiff's Amended Complaint fails to sufficiently allege compliance with the CGIA.   For this reason, the court finds that dismissal without prejudice of Plaintiff's state law claims is appropriate under Rule 12(b)(1).   *Sawyer v. Wash. Cty. Nursing Home*, No. 20-cv-01789-WJM-SKC, 2021 WL 877739, at *2 (D. Colo. Mar. 9, 2021) ("As Plaintiff did not plead compliance with the notice requirement in her Complaint, the Complaint is deficient, and her state law tort claims must be dismissed for lack of subject-matter jurisdiction."); *Weise*, 421 F. Supp. 3d at 1050. Accordingly, Plaintiff's claims against Defendants Kriswonzki, Sackett, and Farrell are **DISMISSED without prejudice**[9] insofar as they assert the following state-law claims: breach of duty; breach of care; breach of trust; bad faith; defamation; invasion of privacy; negligent infliction of emotional distress; intentional infliction of emotional distress; or violations of Colo. Rev. Stat. §§ 16-3-401, 18-3-405.3, 18-3-602, and 18-8-403.

---

[8] Although this court does not reach this issue, the court notes that Colorado Court of Appeals has indicated that the pre-notice filing of a civil action and subsequent filing of a CGIA notice within the 180-day notice period does not serve as a jurisdictional bar to suit.  In *Dicke v. Mabin*, 101 P.3d 1126, 1131 (Colo. App. 2004), the court found that the purposes of the CGIA notice requirement could still be served "by holding the case in abeyance for a ninety-day period after the filing of complaint or, alternatively, by dismissing the case without prejudice and permitting the claimants to refile once the necessary period has expired." *Id.*  The court did, however, find that the defendants were entitled to a ninety-day stay on remand to assess Plaintiff's claims. *Id.* at 1133; *see also Chavez v. Acad. Sch. Dist. 20*, 113 F.3d 1245 (10th Cir. 1997) (casting doubt on argument that filing a lawsuit before timely notice served as a permanent jurisdictional bar to bringing suit but declining to rule on the issue in favor of permitting the plaintiffs "to test theories regarding possible bars to their state law claims in Colorado state court").

[9] *See T.T. ex rel. Torres v. Colo. Dep't of Hum. Servs.*, No. 17-cv-00771-KMT, 2018 WL 1311497, at *12 (D. Colo. Mar. 13, 2018) (where plaintiff failed to comply with CGIA notice requirements prior to filing tort claim, dismissing claim without prejudice for lack of subject matter jurisdiction); *see also Lopez*, 916 P.2d at 1194 (where plaintiff prematurely filed action, describing dismissal with prejudice "harsh and illogical"); *see also Aspen Orthopaedics*, 353 F.3d at 842 (finding dismissal with prejudice appropriate where the plaintiff cannot cure the defect).

### III.    Failure to State a Claim

In addition, Defendants argue that Plaintiff's § 1983 claims should be dismissed for failure to state a claim.  [Doc. 36 at 10].  More specifically, they assert that Plaintiff "fails to include any 'well-pled facts' in support of his § 1983 claims against Defendants Kriswonzki, Sackett, and Farrell and instead merely makes a series of 'conclusory statements' regarding the alleged conduct of those Defendants."  [*Id.* at 12].  For this reason, Defendants argue that Plaintiff's claims are not plausible on their face.  [*Id.* at 13].[10]  Mr. Williams does not respond directly to this argument, but he argues generally that his claims should not be dismissed.  *See* [Doc. 46].  The court addresses each of Plaintiff's substantive causes of action in turn.

### A.    Retaliation

First, Plaintiff alleges that each Defendant retaliated against him.  *See* [Doc. 6 at 24, 26, 28].  To state a First Amendment retaliation claim, a plaintiff must allege that: (1) "the plaintiff was engaged in constitutionally protected activity," (2) "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v. City of Grove,*

---

[10]  For the most part, Defendants focus their 12(b)(6) arguments on Plaintiff's claims against Deputy Sackett, *see* [Doc. 36 at 13-14], but also generally argue that all of Plaintiff's § 1983 claims fail to state a claim under Rule 12(b)(6).  *See* [*id.* at 10-13].  Although Judge Gallagher's Order discusses only a retaliation claim against Deputy Kriswonzki; discrimination, conspiracy, and retaliation claims against Deputy Sackett; and retaliation and conspiracy claims against Sergeant Farrell, *see* [Doc. 16 at 9-10], as discussed above, the court finds it appropriate to construe Plaintiff's Complaint broadly and address all potential claims raised by Plaintiff.  *Hall*, 935 F. 2d at 1110.  And because this court has an independent duty to dismiss claims which fail to state a claim, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), the court does not find that Defendants' failure to address each of the specific claims identified by this court is determinative of whether Plaintiff's claims should proceed.  *See id.*; *see also Barrett v. Pearson*, 355 F. App'x 113, 116 (10th Cir. 2009) (unpublished) (a district court has authority to *sua sponte* dismiss claims under § 1915(e)).

510 F.3d 1196, 1203 (10th Cir. 2007). The "standard for evaluating [the] chilling effect on speech is objective, rather than subjective, [and] a trivial or de minimus injury will not support" a retaliation claim." *Id.* at 1204. "To satisfy the third prong of the First Amendment retaliation test, an inmate must allege specific facts showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (unpublished) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

To establish this causal connection, it is insufficient to simply state that certain acts were motivated by a retaliatory animus. "Recitation of the acts done to plaintiffs . . . does not satisfy the requirement of showing how those acts are connected to plaintiffs' protected activity." *Leal v. Falk*, No. 19-cv-01387-PAB-NYW, 2021 WL 1186662, at *5 (D. Colo. Mar. 29, 2021). Instead, "[a]n inmate claiming retaliation must 'allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'" *Peterson*, 149 F.3d at 1144 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (emphasis omitted)).

The court turns to the remainder of Plaintiff's allegations to determine whether he has sufficiently stated a retaliation claim against each Defendant.

***Deputy Sackett***. Construing the Amended Complaint liberally, Mr. Williams alleges that he was retaliated against by Deputy Sackett for filing grievances or complaining about Mr. Carbajol's harassment. *See* [Doc. 25-26 (alleging that Deputy Sackett retaliated against Plaintiff by moving him to a higher security housing ward and conspiring to get Plaintiff fired from his kitchen job)]. The court finds that Plaintiff has sufficiently alleged that he has engaged in protected activity, the first prong of a retaliation claim. *See Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) ("The filing of prison grievances is constitutionally protected activity.").

As to Plaintiff's allegations that Deputy Sackett retaliated against Plaintiff by transferring him to another cell, *see* [Doc. 6 at 25],[11] Plaintiff does not allege that Deputy Sackett had knowledge that Plaintiff filed his prison grievances so as to demonstrate that the transfer was motivated by a retaliatory animus.  "Causation is lacking where Plaintiff has not shown that the party who took adverse action against him knew of his protected activity."  *Muragara v. Accountemps, a Robert Half Co.*, No. 15-cv-00932-RBJ-NYW, 2015 WL 13730879, at *4 (D. Colo. Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 8133000 (D. Colo. Dec. 8, 2015); *see also Horton v. Davis*, No. 13-cv-01089-REB-BNB, 2014 WL 2593075, at *6 (D. Colo. June 10, 2014) (finding that the plaintiff had failed to state a claim for retaliation where the plaintiff alleged that he had been transferred from one unit to another three months after his protected activity, but where there were no "specific facts from which to infer that [the defendant] had knowledge" of the protected activity).  For these reasons, the court finds that Plaintiff has failed to state a retaliation claim against Deputy Sackett.

**Deputy Kriswonzki and Sergeant Farrell**.  Plaintiff alleges that Deputy Kriswonzki, at the direction of Sergeant Farrell, impermissibly confiscated his property.  *See* [Doc. 6 at 22, 28]. Similarly, Mr. Williams alleges that Sergeant Farrell illegally seized legal evidence and documentation from his cell, and "retaliated against me placing me in a state of emotional harm and duress."  [*Id.* at 28].

This court assumes, without deciding, that Plaintiff has alleged an injury that would chill a person of ordinary firmness from continuing to engage in a protected activity.  *See Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2018 WL 4376440, at *6 (D. Colo. Aug. 2, 2018), *report and recommendation adopted*, 2018 WL 4360624 (D. Colo. Sept. 13, 2018) (suggesting that

---

[11] The court addresses Plaintiff's conspiracy allegations *infra* Section III.F.

confiscation of inmate's property is the sort of injury that might chill protected activity); *but see Frazier v. Flores*, No. 14-cv-02600-CMA-MJW, 2015 WL 3636270, at *3 (D. Colo. June 11, 2015), *aff'd sub nom. Frazier v. Flores*, 628 F. App'x 614 (10th Cir. 2016) (unpublished) (jail-cell transfers and searches of cells are "ordinary incidents of prison life and would not chill a person of ordinary firmness from continuing to engage in protected speech.") (quotation and brackets omitted).  However, the court finds that the Amended Complaint fails to sufficiently plead a causal connection between the protected activity and the conduct of Deputy Kriswonzki or Sergeant Farrell.

With respect to Deputy Kriswonzki, Plaintiff cursorily states that he suffered "[r]etaliation from staff." [Doc. 6 at 24].  Mr. Williams alleges generally that Deputy Kriswonzki came into his cell and took his hangman document and inmate petition, [*id.* at 21], and asserts that Deputy Kriswonzki did so on the command of Sergeant Farrell, [*id.* at 28], who Plaintiff also alleges engaged in retaliation.  [*Id.* at 29].  But Plaintiff does not assert any factual allegations tying any of this conduct to Plaintiff's protected activity, nor does he allege facts showing that "but for the retaliatory motive, the [alleged conduct] would not have taken place.'" *Banks*, 645 F. App'x at 772; *see also Hare v. Baur*, No. 2:19-cv-01091-RB-GJF, 2020 WL 7863534, at *8 (D.N.M. Dec. 30, 2020) ("Because Plaintiff does not even attempt to establish a causal connection between the protected activity and the complained-of conduct . . ., his claim fails.").  "Legal conclusions couched as factual allegations are insufficient evidence to defeat a motion to dismiss," *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, No. 09-cv-01862-ZLW-MEH, 2010 WL 1568574, at *1 (D. Colo. 2010), and the court finds that Plaintiff has failed to state a retaliation claim under Rule 12(b)(6).  For this reason, insofar as the Amended Complaint can be construed as raising First

Amendment retaliation claims, those claims are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Barrett v. Pearson*, 355 F. App'x 113, 116 (10th Cir. 2009) (unpublished).

### B.    Excessive Force

As set forth above, this court construes Mr. Williams's Amended Complaint as asserting an excessive force claim against Deputy Kriswonzki and Sergeant Farrell under either the Eighth or Fourteenth Amendments.  *See supra* Section I.B.  The court addresses these potential claims together.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII; *see also Jesusdaughter v. Colo. Mental Health Inst. at Pueblo*, No. 02-cv-00084-REB-BNB, 2006 WL 2560707, at *8 (D. Colo. Sept. 5, 2006) ("The Eighth Amendment prohibits the use of force to maliciously or sadistically cause harm.").  "[A]n [Eighth Amendment] excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind."  *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999).  A pretrial detainee may also bring claim under the Fourteenth Amendment Due Process Clause raising allegations of excessive force.  *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015).  To state a Fourteenth Amendment excessive force claim, a pretrial detainee "must allege two elements: (1) that the defendant possessed a 'purposeful, a knowing, or possibly a reckless state of mind,' [and] (2) that the defendant's actions were objectively unreasonable in light of facts and circumstances of that particular case."  *Ueding v. Border*, No. 18-cv-00778-KLM, 2019 WL 1077367, at *4 (D. Colo. Mar. 7, 2019) (quoting *Kingsley*, 576 U.S. at 396)).   In analyzing excessive force claims under

the Fourteenth Amendment, courts consider:  "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."  *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003).

Thus, to allege an excessive force claim under either the Eighth or Fourteenth Amendments, the claimant must allege that he or she was subjected to force.  *See cf. Sowsonicut v. Roosevelt City*, No. 2:03-cv-676, 2006 WL 8458646, at *14 (D. Utah Jan. 27, 2006) ("The phrase 'excessive force' obviously requires force that is excessive.").  But here, the Amended Complaint contains no allegations that any physical force was used on Plaintiff, let alone excessive force.  *See generally* [Doc. 6].  Because a requisite element of the claim under either the Eighth or Fourteenth Amendments has not been pled, the court finds that Plaintiff fails to state an excessive force claim under either theory.  *Session v. Wargo*, No. 19-cv-01046-PAB-KLM, 2021 WL 3566818, at *7 (D. Colo. Aug. 12, 2021), *report and recommendation adopted*, 2021 WL 4206427 (D. Colo. Sept. 16, 2021) ("Because Plaintiff does not allege that physical force was applied to him, Plaintiff's allegations do not meet either the objective or subjective prongs required to state an excessive force claim.").

For these reasons, the court finds that Plaintiff fails to state a claim under Rule 12(b)(6) for excessive force.  And because the allegations in the Amended Complaint contain <u>no</u> allegations of any use of force, the court will **DISMISS <u>with</u> prejudice** Plaintiff's excessive force claims for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (dismissal with prejudice is appropriate if amendment would be futile); *Session*, 2021 WL 3566818, at *7 (recommending dismissal with prejudice of excessive force claim where the plaintiff did not allege the application of force).

### C.      Discrimination

The court has construed Plaintiff's discrimination claim liberally to allege a claim arising under the Equal Protection Clause of the Fourteenth Amendment.  *See supra* Section I.B.  The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This Clause "is essentially a [directive] that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause is not "some generic guard against arbitrary or unlawful governmental action," but is instead "a more particular and profound recognition of the essential and radical equality of all human beings."  *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012).

Typically, the Equal Protection Clause "applies to class-based discrimination, i.e. treating a person differently because he is a member of a protected class, but here Plaintiff has not alleged that he is a member of a protected class, and therefore he appears to be alleging that he has been singled out as part of a 'class of one.'"  *Clark v. Shrader*, No. 20-cv-01410-DDD-KLM, 2021 WL 229283, at *5 (D. Colo. Jan. 22, 2021), *report and recommendation adopted*, ECF No. 101, Civil Action No. 20-cv-01410-RMR-NYW.  To state a class-of-one claim under the Equal Protection Clause, the plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The burden on a plaintiff to show similarity in class-of-one cases is "exacting," as it is "exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable."  *Shifrin v. Toll*, 483 F. App'x 446, 449 (10th Cir. 2012) (unpublished).  Thus, Plaintiff must allege facts demonstrating that he was treated

differently from others who are "similarly situated in *every material respect*." *Id.* (quotation omitted and emphasis added).

Plaintiff fails to meet that threshold. He alleges generally that he was fired for "allegedly passing a note to a laundry girl," but that his work partner, Brock Kogan, was not fired, [Doc. 6 at 17], even though "Brock Kogan and 'Laundry girl'" "were the only individuals . . . receiving and passing anything." [*Id.* at 26]. But Plaintiff fails to allege specific facts showing that he and Mr. Kogan were similarly situated "in every material respect." *Shifrin*, 483 F. App'x at 449. While Mr. Williams alleges that both he and Mr. Kogan were volunteer kitchen workers, he does not allege, for example, that the two workers had similar past work history, disciplinary history, or engaged in the same level of alleged note-passing so as to meet the exacting burden of demonstrating the requisite similarity. *See* [Doc. 6 at 26].

Although the court must construe Mr. Williams's filings liberally, it "may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged." *Walker v. Amling*, No. 18-cv-00826-NYW, 2018 WL 6528135, at *3 (D. Colo. Dec. 12, 2018); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[The court's] role is not to act as [a pro se litigant's] advocate."). The court finds that, because Mr. Williams has alleged no facts demonstrating that he was similarly situated to Mr. Kogan, he has not met the Rule 12(b)(6) standards required to state a class-of-one claim. *See Shifrin*, 483 F. App'x at 450 (finding that the plaintiff failed to state a class-of-one claim where the complaint "contain[ed] minimal references to similarity"); *Clark*, 2021 WL 229283, at *6 ("[T]he mere fact that other pretrial detainees were [treated differently than the plaintiff] does not adequately allege that they were similarly situated to" the plaintiff.).

For the reasons set forth above, the court finds that Plaintiff has not sufficiently stated a discrimination claim arising under the Equal Protection Clause.  As a result, the court will **DISMISS** Plaintiff's discrimination claim **without prejudice**.  28 U.S.C. § 1915(e)(2)(B)(ii); *Barrett*, 355 F. App'x at 116; *Clark*, 2021 WL 229283, at *6.

### D.     Unreasonable Search and Seizure

Next, Plaintiff raises an unreasonable search and seizure claim against both Deputy Kriswonzki and Sergeant Farrell.  [Doc. 6 at 23, 29].  Plaintiff asserts this claim under the Fourth Amendment.  *See generally* [*id.*].

***The Fourth Amendment***.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action.'"  *Hudson v. Palmer*, 468 U.S. 517, 525 (1984) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

The United States Supreme Court has determined that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell" because "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  *Id.* at 526, 527-28.  Thus, "[p]risoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'"  *See Jimenez v. Martz*, No. 11-cv-00948-PAB-CBS, 2012 WL

976034, at *7 (D. Colo. Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 975753 (D. Colo. Mar. 21, 2012).

The Supreme Court has not ruled whether pretrial detainees similarly have no reasonable expectation of privacy in their jail cells, but has indicated that "any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 557 (1979).  Meanwhile, a limited number of Circuit courts have held that a reasonable expectation of privacy does not exist in a pretrial detainee's jail cell. *See, e.g.*, *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (unpublished); *United States v. Hogan*, 539 F.3d 916, 924 (8th Cir. 2008); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996); *but see United States v. Cohen*, 796 F.2d 20, 24 (2d Cir. 1986) (holding that a pretrial detainee retained an expectation of privacy within his cell that was sufficient to challenge a search of his cell under the Fourth Amendment).  Regardless, the court need not decide whether a pretrial detainee has a reasonable expectation of privacy in his or her jail cell because Mr. Williams's Amended Complaint contains no allegations or indication that he was a pretrial detainee at the time of the events at issue here, so as to demonstrate that he had any—albeit diminished—expectation of privacy in his jail cell. *See generally* [Doc. 6].  For this reason, Mr. Williams fails to state a Fourth Amendment claim for an unreasonable search or seizure.

**Fourteenth Amendment**.  In the alternative, the Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  Insofar as Plaintiff's search-and-seizure claims could be construed as Fourteenth Amendment claims, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."

*Hudson*, 468 U.S. at 533.  Here, Plaintiff does not allege that he does not have an adequate post-deprivation remedy under state law.  *See* [Doc. 6].  Instead, Plaintiff alleges that Defendants have represented that Plaintiff may obtain his documents "through a discovery process," [*id.* at 22], and Plaintiff represents that he has filed a replevin action in state court. *See* [Doc. 46 at 2].[12]  Another court in this District has determined that the prison grievance process and the CGIA provide an adequate post-deprivation remedy.  *See Jimenez*, 2012 WL 976034, at *5; *see also Ali v. Reeves*, No. 05-cv-02610-PSF-CBS, 2006 WL 1800799, at *4 (D. Colo. June 28, 2006), *aff'd on other grounds*, 232 F. App'x 777 (10th Cir. 2007) (unpublished) ("When property is wrongfully taken by a state official, Colorado law provides an adequate postdeprivation remedy"); *see also Elliott v. Cummings*, 49 F. App'x 220, 228 (10th Cir. 2002) (unpublished) (Anderson, J., concurring) ("Either the prison grievance procedures . . . or a state law claim for conversion, which [the plaintiff] presumably could pursue, provides an adequate post-deprivation remedy, such that his federal constitutional claim is subject to dismissal.").  Because Plaintiff has an adequate state post-deprivation remedy, the court finds that Plaintiff cannot state a Fourteenth Amendment claim for the confiscation of his documents.

---

[12] "Replevin is a possessory action" in which a "claimant seeks to recover possession of personal property and damages for its unlawful detention." *Metro Nat. Bank v. Dist. Ct. In & For City & Cty. of Denver*, 676 P.2d 19, 22 (Colo. 1984); *see also City & Cty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 764 (Colo. 1992) ("The object of a replevin action is to determine the right to possession.").  The court has obtained a copy of Plaintiff's Verified Complaint in Replevin, *see* [Doc. 49-1], of which the court takes judicial notice.  *See Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) ("This is an official court record in a related state court case, subject to judicial notice.").  In the Verified Complaint in Replevin, Plaintiff asserted an ownership interest in the documents at issue in this case.  *See* [Doc. 49-1 at 1].  Based on the state court docket, it appears that Plaintiff's state court case was dismissed with prejudice.  *See* [Doc. 49-2]; *see also Mitchell v. Dowling*, 672 F. App'x 792, 794 (10th Cir. 2016) (unpublished) (taking judicial notice of state-court docket sheet).  The fact that Plaintiff "did not obtain the relief he sought in the state court action does not demonstrate the state court remedy was unavailable or inadequate." *Frazier v. Flores*, No. 13-cv-00891-BNB, 2013 WL 12064452, at *2 (D. Colo. Dec. 3, 2013), *aff'd*, 571 F. App'x 673 (10th Cir. 2014) (unpublished).

For all of these reasons, the court will **DISMISS** Plaintiff's claims for an unreasonable search and seizure **without prejudice**.  28 U.S.C. § 1915(e)(2)(B)(ii); *Barrett*, 355 F. App'x at 116.[13]

    **E.    Fourteenth Amendment Due Process**

    Plaintiff makes various assertions that his Fourteenth Amendment due process rights have been violated due to an alleged failure to train, supervise, or hire; abuse of authority; duress of imprisonment; duress of property.  *See, e.g.*, [Doc. 6 at 19].  The court addresses these purported constitutional bases in turn.

    *Failure to Train*.  A failure to train "can provide the basis for a § 1983 claim." *Eckert v. Town of Silverthorne*, 25 F. App'x 679, 690 (10th Cir. 2001) (unpublished).  "Where a superior's failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1240 (10th Cir. 1999)).

    But generally, to impose § 1983 supervisory liability, the plaintiff must establish an underlying constitutional violation.  *Est. of Vallina v. Cty. of Teller Sheriff's Off.*, 757 F. App'x

---

[13] Defendants construe Plaintiff's search-and-seizure claim as asserting an access-to-courts claim.  *See* [Doc. 36 at 9].  However, even construing Plaintiff's filings liberally, the court does not interpret the Amended Complaint as raising such a claim.  "[I]n order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Carter v. El Paso Cty. Sheriff Dep't*, No. 15-cv-01125-LTB, 2015 WL 3523211, at *3 (D. Colo. June 3, 2015) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  "[A]n inmate must allege some prejudice caused by the denial" of access to courts. *Walker v. Wilkerson*, 310 F. App'x 284, 285 (10th Cir. 2009) (unpublished).  Where the basis of the complaint is the denial of legal resources, he must allege that this denial "hindered his efforts to pursue a legal claim." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Here, Plaintiff raises no such allegations. *See generally* [Doc. 6].  Accordingly, the court does not construe Mr. Williams's claim as an access-to-courts claim.

643, 647 (10th Cir. 2018) (unpublished).  As set forth above, the court has concluded that Plaintiff has failed to do so here.  *See supra* Sections III.A-D.  Moreover, Plaintiff has failed to identify which, if any, of the Defendants are supervisors, nor has Plaintiff explained how any alleged injuries arose out of Defendants' purported failure to train, hire, or supervise.  *See generally* [Doc. 6]; *cf. Glaser v. City & Cty. of Denver*, 557 F. App'x 689, 703 (10th Cir. 2014) (unpublished) (affirming dismissal of supervisory liability claims where the plaintiff had failed to allege which supervisors took what actions); *Breedlove v. Costner*, 405 F. App'x 338, 343 (10th Cir. 2010) (unpublished) (affirming dismissal of complaint where the plaintiff had failed to identify what due process violation occurred as a result of supervisor defendants' actions or inactions).  It follows that Plaintiff has not sufficiently alleged a due process violation arising out of any failure to train, supervise, or hire.

  ***Abuse of Authority***.  Insofar as Plaintiff asserts a due process claim based on an "abuse of authority," the court finds that Plaintiff has failed to state a claim under Rule 12(b)(6).  "A Fourteenth Amendment substantive due process claim arises when a plaintiff alleges the government deprived him of a fundamental right." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013).  "Substantive due process protects fundamental liberty interests and protects against the exercise of government authority that 'shocks the conscience.'" *Id.* (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)).

  The conscience-shocking standard is difficult to define, *Moore v. Guthrie*, 438 F.3d 1036, 1041 (10th Cir. 2006), but "[c]onduct that shocks the judicial conscience must be egregious and outrageous." *Est. of Carrigan v. Park Cty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019); *see also Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir. 2012) (to meet this high threshold, conduct must have a "degree of outrageousness and magnitude of potential or actual

harm [that is] truly conscience shocking"). "[T]he Due Process Clause is not a guarantee against incorrect or ill-advised government decisions," *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (quotation omitted), but conscience-shocking behavior can be demonstrated by showing that a government actor abused his or her authority or employed that authority as "an instrument of oppression." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008).

Here, Mr. Williams alleges generally that Defendants took his documents without his permission, transferred him to a less desirable jail cell, and "harassed, bullied, [coerced], and intimidated" him. *See, e.g.*, [Doc. 6 at 28]. While the court does not question the seriousness of these allegations, the court cannot conclude that such alleged behavior shocks the conscience or demonstrates that Defendants employed their authority as an "instrument of oppression." As set forth above, jail-cell transfers and searches of cells are "ordinary incidents of prison life." *Frazier*, 2015 WL 3636270, at *3. And although Plaintiff argues his property was impermissibly taken by Defendants, "the loss or destruction of [Plaintiff's] property simply does not shock this Court's conscience." *Davis v. Harlow*, No. CIV.A. 11-1506, 2013 WL 1195033, at *10 (W.D. Pa. Mar. 22, 2013); *see also Williams v. Gartrell*, No. CIV.A. 15-5609 MCA, 2015 WL 5110913, at *4 (D.N.J. Aug. 31, 2015) (dismissing due process claim under 28 U.S.C. § 1915(e)(2)(B)(ii) because allegations that prison guards stole the plaintiff's property did not shock the conscience).

Finally, while allegations of harassment, bullying, coercion, or intimidation must be taken seriously, such allegations arise out of Plaintiff's allegations that Deputy Kriswonzki, on the command of Sergeant Farrell, came to Mr. Williams's cell three times to ask for the documents. *See* [Doc. 6 at 29 (alleging that Sergeant Farrell harassed Plaintiff "by sending Deputy Krizwonski [sic] back to [his] cell three times consecutively to appropriate, confiscate [the] documents in which [Deputy Kriswonzki] bullied, [coerced], and intimidated [Plaintiff]")]. The court cannot

conclude that Deputy Kriswonzki's three visits to Plaintiff's cell, or Sergeant Farrell's directive that Deputy Kriswonzki make those visits, amounts to conscience-shocking behavior. *Cf. Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (finding that the city of Chicago's act of giving out 24 unjustified parking tickets to resident, "while troubling," did not shock the conscience, as required to state a due process claim); *cf. Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1173 (D. Colo. 2001) (finding that school's "alleged toleration of bullying, teasing, and intimidation[,] . . . while reprehensible if true, [was] not conscience shocking in a Fourteenth Amendment substantive due process sense."). The court respectfully does not find Plaintiff's allegations shock the conscience so as to state a due process claim.

Accordingly, the court finds that Plaintiff has failed to state a due process claim arising out of allegations of a conspiracy and will **DISMISS** Plaintiff's Fourteenth Amendment due process claims against Defendants **without prejudice** insofar as they are based on failure to train or abuse of authority. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Barrett*, 355 F. App'x at 116.

***Duress of Property or Duress of Imprisonment***. Finally, Mr. Williams cursorily asserts a due process claim based on "duress of property" or "duress of imprisonment." *See, e.g.*, [Doc. 6 at 23]. The court's independent research has uncovered no basis under the Due Process Clause for claims of "duress or imprisonment" or "duress of property." "Duress of property" is a legal basis for voiding a contract where one party has control or possession of the goods of another and refuses to surrender the property without the other's compliance with an unlawful demand. *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972). Similarly, "duress of imprisonment" is a basis to void a contract if it was entered into when one party was under the threat of imprisonment. *Magniac v. Thomson*, 16 F. Cas. 461, 477 (C.C.E.D. Pa. 1852), *aff'd*, 56 U.S. 281 (1853); *see also Baker v. Morton*, 79 U.S. 150, 158 (1870). The Amended Complaint

contains no allegations of any contract that Plaintiff allegedly entered into under duress. *See* [Doc. 6]. The court finds that Plaintiff has failed to state a due process claim under either of these bases.

Because the court finds that Mr. Williams has not stated a Fourteenth Amendment due process claim on any of the raised bases, the court will **DISMISS** Plaintiff's Fourteenth Amendment claims **without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Brereton*, 434 F.3d at 1219.

### F.    Conspiracy

Finally, Plaintiff alleges that Deputy Sackett conspired with others to violate Plaintiff's First Amendment rights and that Deputy Kriswonzki and Sergeant Farrell conspired with each other to violate Plaintiff's due process rights. [Doc. 6 at 26, 28]. To state a conspiracy claim, the plaintiff must 'demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights.'" *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1202-03 (D. Colo. Sept. 24, 2020) (quoting *Montoya v. Bd. of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007)). To do so, Plaintiff "must do more than make conclusory allegations of a conspiracy." *Jorgensen v. Montgomery*, No. 06-cv-00853-MSK-BNB, 2008 WL 216398, at *2 (D. Colo. Jan. 24, 2008).

Mr. Williams generally alleges that Deputy Kriswonzki and Sergeant Farrell conspired against him by illegally seizing his legal evidence and documentation from his cell. [Doc. 6 at 28]. But reading the factual allegations, it appears that factually, Plaintiff avers that Sergeant Farrell "commanded" Deputy Kriswonzki to seize his evidence and documentation. [*Id.*]. There are no factual allegations that Deputy Kriswonzki discussed or agreed to a plan of action. To the extent that Plaintiff alleges that Deputy Kriswonzki and Sergeant Farrell conspired against him to violate his due process rights, the Amended Complaint's failure to plead a meeting of the minds

renders this claim unviable.  *See Garth O. Green Enter., Inc. v. Harward*, No. 2:15-cv-00556-DN-EJF, 2017 WL 1184024, at *10 (D. Utah Mar. 29, 2017) (where the plaintiff failed to allege that the defendants "specifically agreed on an object to be accomplished," the plaintiff had failed to sufficiently allege a meeting of the minds).

Moreover, beyond stating that Deputy Sackett retaliated against him by conspiring with other deputies to get him fired, Plaintiff makes no non-conclusory allegations that Deputy Sackett had a meeting of the minds with other individuals, nor does the Amended Complaint contain any allegations of concerted activity or explain how Deputy Sackett was involved in the alleged conspiracy.  *See* [Doc. 6 at 25-27]; *see also Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (unpublished) (finding conspiracy allegations deficient where the plaintiff had failed to identify each individual defendant's culpable actions); *cf. Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) (affirming grant of summary judgment in favor of defendants on conspiracy claim where the plaintiff did not identify any of the alleged participants in the conspiracy or the manner in which they operated).  The court finds that Mr. Williams has failed to state a conspiracy claim against Deputy Sackett.  For these reasons, the court will **GRANT** the Motion to Dismiss and will **DISMISS without prejudice** Plaintiff's conspiracy claims against all Defendants.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Brereton*, 434 F.3d at 1219.

In sum, the court finds that all of Plaintiff's claims must be dismissed for failure to state a claim.  For this reason, the court does not reach Defendants' remaining qualified immunity argument.  *See* [Doc. 36 at 6-10].

## IV.    Prejudice and Leave to Amend

Defendants request that Plaintiff's claims be dismissed with prejudice, *see* [Doc. 36 at 15], but assert no legal basis in support.  Dismissal with prejudice is appropriate only when it is patently

obvious the plaintiff cannot plead a plausible claim for relief and thus amendment would be futile. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice to allow amendment of the complaint is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to him" (internal quotation marks omitted)). "Generally, a court will not dismiss a pro se litigant's action without leave to amend," *Alfaro v. Cty. of Arapahoe*, No. 18-cv-00737-MSK-NYW, 2018 WL 5259609, at *2 (D. Colo. May 2, 2018), *report and recommendation adopted*, 2018 WL 4577253 (D. Colo. Sept. 25, 2018), and Tenth Circuit has instructed that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend," particularly in cases where the "deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). In these circumstances, "dismissal of the complaint without prejudice is preferable." *Id.*

Here, the court cannot conclude that it is "patently obvious" that Mr. Williams cannot state a claim upon which relief could be granted. As a result, Plaintiff's claims are **DISMISSED without prejudice**, with the exception of his Fourth Amendment excessive force claim. However, Plaintiff is hereby advised that, should he elect to amend his Amended Complaint, he will be expected to cure the deficiencies identified in this Order; in particular, Mr. Williams must adequately identify his asserted claims and the legal basis for each of those claims.

### SERVICE OF DEFENDANT CARBAJOL

Next, the court addresses the service of Defendant Carbajol, to whom many of the factual allegations are directed. Plaintiff initiated this civil action on July 20, 2020, *see* [Doc. 1], and filed an Amended Complaint on August 10, 2020. [Doc. 6]. Defendant Carbajol is identified as a

"Trinity Food Service Worker," with an address of 2739 E. Las Vegas St. Colorado Springs, CO 80906.  [*Id.* at 3-4].  From the identification of Defendant Carbajol as a "Trinity Food Service Worker," this court presumes that Defendant Carbajol is not an employee of the El Paso County Jail, but of a private corporation, Trinity Food Services.  *See* [Doc. 16 at 8].  Based on the court's review of the Certificate of Service in this action, it appears that service of Defendant Carbajol was attempted through the El Paso County Attorney's Office.  [Doc. 22].  The Waiver of Service of Summons on behalf of Defendants Sackett, Farrell, and Kriswonzki expressly excluded Defendant Carbajol.  [Doc. 23].  And because Defendant Carbajol is not properly served through the El Paso County Attorney's Office, it appears that Defendant Carbajol has not yet been served in this case.

The court notes that Mr. Williams was incarcerated when he initiated this lawsuit and was granted leave to proceed in forma pauperis.  [Doc. 4].  An incarcerated prisoner may rely on the United States Marshals service to serve process.  *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995).  In addition, a court must order service by the United States Marshals service if the plaintiff is authorized to proceed *in forma pauperis*.  Fed. R. Civ. P. 4(c)(3).  It is not clear that the United States Marshals service has attempted to serve Defendant Carbajol at 2739 E. Las Vegas Street, Colorado Springs, Colorado 80906, as it is clear that he is not represented by the El Paso County Attorney's Office.  Thus, this court **ORDERS** the United States Marshals Service to attempt service at the address provided for Mr. Carbajol by Plaintiff, or, in the alternative, file a Certificate of Service demonstrating its previous attempt to serve Mr. Carbajol at the address provided by Plaintiff.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. 36] is **GRANTED**;

(2)     To the extent that Plaintiff's Amended Complaint can be read to assert an excessive force claim against Deputy Kriswonzki, Deputy Sackett, or Sergeant Farrell, the claim is **DISMISSED with prejudice**;

(3)     The remainder of Plaintiff's claims against Deputy Kriswonzki, Deputy Sackett, or Sergeant Farrell are **DISMISSED without prejudice**;

(4)     Should Plaintiff seek to amend his Amended Complaint, Plaintiff **SHALL FILE** a Second Amended Complaint on or before **December 28, 2021**;

(5)     Plaintiff is advised that, if he does not file a Second Amended Complaint on or before **December 28, 2021**, the court will enter judgment in favor of Deputy Kriswonzki, Deputy Sackett, and Sergeant Farrell as to Plaintiff's claims against them;

(6)     The United States Marshals Service shall attempt to **SERVE** Defendant Carbajol at 2739 E. Las Vegas Street, Colorado Springs, Colorado 80906, or file a Certificate of Service reflecting a previous attempt of service at this address; and

(7)     A copy of this Order and Order to Show Cause shall be sent to:

Thomas Jefferson Williams IV
3615 Robert Road
Colorado Springs, Colorado 80907

DATED:  November 30, 2021                    BY THE COURT:

Nina Y. Wang
United States Magistrate Judge